# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, NORTHERN DISTRICT

| | |
|---|---|
| KAREN S. MEMMOTT,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE CO.,<br><br>　　　　　　Defendant. | **REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 24 & 27)**<br><br>Case No. 1:13-CV-00025-DB-EJF<br><br>District Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Karen S. Memmott moves the Court[1] for Summary Judgment (ECF No. 24) as does United of Omaha Life Insurance Co. (United of Omaha) (ECF No. 27). Ms. Memmott requests the Court enter summary judgment against United of Omaha because she claims United of Omaha arbitrarily and capriciously interpreted her husband's life insurance (the "Plan"). (ECF No. 24.) Prior to his death, Mr. Memmott held an automobile sales position with the Larry H. Miller Chrysler, Jeep, Dodge and Ram Auto Dealership (the "Dealership"). (Memmott Mot. For Sum. J. 2, ECF No. 24; Supplemental Bullard Decl., Dec. 19, 2012, Admin. R., ECF No. 32-6 at 13-16.) Ms. Memmott takes issue with United of Omaha's determination that the Plan did not vest on August 1, 2012—a day she claims Mr. Memmott actively worked in accordance with the Plan. (*Id.*) United of Omaha requests the Court enter summary judgment against Ms. Memmott, upholding its decision, because it claims Mr. Memmott did not engage in active work after July 30, 2012. (United of Omaha Mot. for Sum. J. 17-18, ECF No. 28.) In explaining its determination, United of Omaha points to Mr. Memmott's work before July 30, 2012 and notes it took place at the Dealership. (Letter from Lori Myhr, Sr. Compliance Analyst, United of

---

[1] On April 3, 2013, District Judge Dee Benson referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 18.)

1

Omaha, to Karen Memmott (Jan. 30, 2013), Admin R., ECF No. 32-6 at 1.) Ms. Memmott argues Mr. Memmott's work from home on August 1 and 2, 2012 constitutes active work at a customary and/or alternative place of employment. (Letter from Karen Memmott to Molly Kuehl (Dec. 19, 2012), Admin R., ECF No. 32-6 at 10-12.)

The Court has carefully considered these Motions, the supporting memoranda, and the Administrative Record and RECOMMENDS the District Judge GRANT Ms. Memmott's Motion for Summary Judgment and DENY United of Omaha Life Insurance Co.'s Motion, awarding benefits to Ms. Memmott.

## I. STANDARD

When ERISA governs a case "'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is *not* entitled to the usual inferences in its favor.'" *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013) (emphasis added) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

Courts review a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) using the *de novo* standard of review *unless* the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). United of Omaha, the administrator, expressly reserved the right to construe and interpret all terms and provisions of the Plan at issue. (The Plan, Admin. R. 6, ECF No. 32.) Where an ERISA provider has explicitly retained authority to interpret provisions in the plan, as United of Omaha did here, the court employs a deferential arbitrary or capricious standard of review. *See*

*Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). Under this arbitrary-and-capricious standard, the court considers whether the administrator reasonably interpreted the plan in good faith, *LaAsmar*, 605 F.3d at 796 (internal citation omitted), and whether substantial evidence and the law support the administrator's decision. *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009).

Ms. Memmott claims United of Omaha contracted for *de novo* court review of its decisions by stating that "'a court will review the insured person's eligibility or entitlement to benefits under the policy.'" (Memmott Combined Reply & Opp'n 11, ECF No. 34.) The Court does not read this provision as contracting for *de novo* review. Rather, the provision allows the insured person to seek review of its determinations in court but does not address the standard of that review.

Ms. Memmott takes the position that allowing the administrator to have discretionary authority to interpret the Plan is unconscionable. (Memmott Mot. for Sum. J. 10, ECF No. 24.) The Supreme Court, however, has explicitly approved such common grants of authority. (United of Omaha Mot. for Sum. J. 14, ECF No. 28; *see also Firestone Tire & Rubber Co.*, 489 U.S. at 115.) Nevertheless, to address problems that may arise from that authority, a court's review of a denial of benefits must take into account whether such discretion belongs to an administrator operating under a conflict of interest. *Weber*, 541 F. 3d at 1010. Specifically, a reviewing court should consider the conflict of interest arising where an entity serves both as an ERISA plan administrator and as a payer of benefits as one factor in its analysis of whether the administrator abused its discretion, weighted more or less heavily depending on the conflict's magnitude. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

Here United of Omaha serves both as the administrator and as the payer of benefits.

3

(United of Omaha Reply in Supp. of Def.'s Cross-Mot. for Sum. J. 6-7, ECF No. 35.) Because United of Omaha's interpretation of the Plan's language results in no payment under the Plan, but the alternative interpretation of the Plan's language results in full payment under the Plan, this Court finds that the conflict of interest exists in this case and must serve as a factor in decision making.

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008) (citations omitted). The Court notes that neither party has submitted any evidence outside of the Administrative Record. Specifically, Ms. Memmott did not submit any evidence to show United of Omaha had a history of biased claims administration, and United of Omaha did not submit any evidence to explain what, if any, measures it had taken to combat the conflict of interest that exists when it occupies both the positions, administrator and payer. Therefore, the record reflects the existence of a conflict of interest that the Court will factor into its review.

## II. FACTS

The parties agree that Mr. Memmott would become eligible for life insurance on August 1, 2012. (Memmott Mot. for Sum. J. 2, ECF No. 24; United of Omaha Mot. for Sum. J. 9, ECF No. 28.) On July 30, 2012, Mr. Memmott went to the Dealership to work. (Memmott Mot. for Sum. J. 4, ECF No. 24; United of Omaha Mot. for Sum. J. 9, ECF No. 28.) Part way through the day, Jason Rainey, Mr. Memmott's supervisor and the Floor Manager, directed Mr. Memmott to work from home by phone because Mr. Memmott coughed up blood. (Rainey Decl., Admin. R.,

ECF No. 32-6 at 48.) Mr. Memmott had July 31, 2012 as a regular day off. (Bullard Decl., Nov. 6, 2012, Admin R., ECF No. 32-6 at 65.) When Mr. Memmott did not feel better on August 1, Mr. Rainey directed him to continue working from home. (Rainey Decl., Admin. R., ECF No. 32-6 at 48.) Mr. Memmott received and made some work phone calls at home on August 1 and 2, 2012, including closing one joint deal for which he received a commission. (Rainey Decl. & Warner Decl., Admin R., ECF No. 32-6 at 48, 59-60.)

The Administrative Record includes evidence regarding Mr. Memmott's work from home on August 1 and 2, 2012. Bill Orton, Mr. Memmott's sales manager, confirms that Mr. Memmott worked from home on July 30 and August 1, 2012 at the direction of the floor manager. (Bill Orton Decl., ECF No. 32-6 at 56.) Mr. Orton also confirms Mr. Memmott called him on August 1 and closed a joint deal on August 2, 2012. *Id.* Mr. Orton further indicates that most sales people customarily worked from home as well as the Dealership. *Id.* Lastly, Mr. Orton states that Mr. Memmott worked actively as a salesperson on August 1, 2012. *Id.*

Troy Bullard, the General Manager, explains that the Dealership expected salespeople to work from home regularly in addition to work at the Dealership, that the Dealership directed Mr. Memmott to work from home on August 1, 2012, that Mr. Memmott did in fact work from home that day, and that salespeople never recorded work done from home on timesheets. (Supplemental Bullard Decl., Dec. 19, 2012, Admin. R., ECF No. 32-6 at 13-16.) Mr. Bullard explains that the Dealership expects sales personnel to work remotely at all times as needed to promote the business. *Id.* Mr. Bullard confirms that Mr. Memmott worked from home regularly and that Mr. Memmott actively worked on August 1, 2012. (Bullard Decl., Nov. 6, 2012, ECF No. 32-6 at 63-66.) The Dealership does not require sales personnel to record time worked off the Dealership premises because the salespeople keep timesheets only in the unlikely event their

5

commissions fail to meet minimum wage. (Supplemental Bullard Decl., Dec. 19, 2012, Admin. R., ECF No. 32-6 at 13-16.) Indeed, Mr. Memmott's compensation plan does not reflect any compensation based on hours worked. (Salesperson Comp. Plan, Admin. R., ECF No. 32-6 at 153-155.)

Jason Rainey, the Floor Manager, states he, as Mr. Memmott's supervisor, directed Mr. Memmott to work from home on July 30, 2012, August 1, 2012, and the next several days. (Rainey Decl., *id*. at 48.) Mr. Rainey states Mr. Memmott did so, and salespeople often worked from home. (*Id.*) Mr. Rainey notes Mr. Memmott earned a commission on a joint sale August 2, 2012. (*Id.*)

Ty Warner, a salesperson, details the standard practice of cell phone availability and confirms two conversations with Mr. Memmott that enabled Mr. Warner to close a joint sale of theirs on August 2, 2012. (Warner Decl., *id*. at 59-60.) A letter from Ms. Memmott and Troy Bullard's supplemental declaration state that Mr. Memmott worked more than 32 hours during that first week of August 2012. (Letter from Karen Memmott to Molly Kuehl (Dec. 19, 2012), Admin R., ECF No. 32-6 at 10-12; Supplemental Bullard Decl., Dec. 19, 2012, *id*. at 13-16.)

The Administrative Record further includes both an e-mail exchange with and the declaration of Breann Johnson, Human Resources Administrator. (Johnson Decl., *id.* at 68-69, 228.) On September 24, 2012, Ms. Johnson e-mailed Sandy Valeika of United of Omaha, "[a]s a follow up to our previous phone conversation, Earl Memmott's last day worked was 30 July, 2012." (*Id*. at 228.) However, in her declaration, Ms. Johnson clarifies that she based her entire conversation with Ms. Valeika upon Ms. Valeika's inquiry into the last day Mr. Memmott was "physically present working at the Dealership location as an employee," and so her e-mail responded only to that question. (*Id*. at 68.) Ms. Johnson further explains that Mr. Memmott

6

customarily worked by phone when not at the Dealership and did so from August 1 until August 3, 2012. (*Id.*) Ms. Johnson also states that the Dealership did not remove Mr. Memmott from its books until the day after his death, August 17, 2012. (*Id.*)

United of Omaha denied benefits—initially and on appeal—and asserted the following rationale:

> As previously explained, we have determined that while Mr. Memmott may have been performing some work related duties while at home after July 30, 2012, he was not Actively Working as defined by the policy. That is because he was not performing "the normal duties of a regular job for the Policyholder." Nor were the limited tasks he performed on and after August 1, 2012 performed at the Policyholder's "usual place of business" or an alternative work site. The employee's home was not an alternative work site. Nor was the employee's home the "customary place of employment." That is confirmed by the fact that your letter as well as the December 19, 2012 statement of Troy Bullard, General Manager, indicated Mr. Memmott worked 54.83 hours at the dealership the week of July 17, 2012 and 59.35 hours at the dealership the week of July 24, 2012. The time sheets provided showed that Mr. Memmott worked at the location of the dealership more than 40 hours a week in all weeks prior to the date he left and never returned. This demonstrates that the dealership location, not his home, and not any other location, was the usual place of the Policyholder's business.

(Letter from Lori Myhr, Sr. Compliance Analyst, United of Omaha, to Karen Memmott (Jan. 30, 2013), Admin R., ECF No. 32-6 at 1.)

### III. DISCUSSION

United of Omaha denied benefits to Ms. Memmott based on its interpretation of the Plan's term "Active Work" and the application of that interpretation to the facts. The Employee Eligibility section of the Life Insurance Plan provides as follows:

> **Actively Working** or **Active Work** means performing the normal duties of a regular job for the Policyholder or Affiliate at:
>   (a) the Policyholder or Affiliate's usual place of business;
>   (b) an alternative work site at the direction of the Policyholder or Affiliate; or
>   (c) a location to which one must travel to perform the job.
> An Employee will be considered Actively Working on any day that is:
>   (d) a regular paid holiday or day of vacation;
>   (e) a regular or scheduled non-working day; or

7

> (f) a day on which the Employee is on a qualified family or medical leave of absence as defined by the Family and Medical Leave Act of 1993;
> provided the Employee was Actively Working on the last preceding regular work day.
>
> If an Employee's customary place of employment is at home, the Employee will be considered Actively Working if not confined on that day as described in the Confinement Rule.

(Certificate of Ins., Admin. R., ECF No. 32-1 at 13.) The Plan also requires a minimum of thirty-two hours of work each week for an employee to meet the eligibility requirements. (*Id.*)

Because only an actively working employee becomes insured on that eligibility date (*id.* at 3-4), the Court must determine what the phrase "Active Work" means and whether Mr. Memmott's actions constitute actively working on August 1, 2012. "'[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious.'" *Weber,* 541 F.3d at 1011 (alteration in original) (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,* 491 F.3d 1180, 1190 (10th Cir. 2007)).

### A. Customary Place of Employment

United of Omaha cites figures from the two weeks prior to August 1, 2012, in which Mr. Memmott worked over fifty hours physically at the Dealership for the proposition that "Mr. Memmott's normal duties of his regular job occurred *at the dealership.*" (United of Omaha Mot. for Sum. J. 17, ECF No. 28 (emphasis in original).) United of Omaha also notes that all of the time sheets provided to United of Omaha indicate Mr. Memmott worked at the Dealership over forty hours weekly. From this, United of Omaha concludes insufficient hours remained in the week for Mr. Memmott's home to constitute his "customary place of employment" or "usual place of business." (*Id.*) The Court RECOMMENDS the District Judge find that United of

Omaha reasonably and in good faith concluded that the Dealership constituted Mr. Memmott's "customary place of employment" given he typically worked over forty hours a week at the Dealership.

### B. Alternative Work Site

Although the Dealership constituted Mr. Memmott's "customary place of employment", subsection (b) of the definition of "Active Work" deems work from an alternative work site performed at the direction of the Policyholder or Affiliate "Active Work". The Plan presents the alternative but does not provide any more direction.

Many courts have confronted the question of whether an employee engaged in active work while ill. The Tenth Circuit noted the difficulty in determining whether the plaintiff qualifies as an "Active Full-time Employee" during a period in which he suffers from a severe illness. *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1170, 1175 (10th Cir. 2006). Mr. DeGrado and his supervisor indicated the plaintiff frequently worked from home for less than eight hours per day; nonetheless, his employer paid him his full salary for the period. *Id.* at 1175. The court remanded that case for further findings. *Id.* at 1176. The court in *Masten v. Life Investors Ins. Co.*, 474 F. Supp. 373, 378-380 (D.S.D. 1979) found the requirement of "regular, full-time active employment" ambiguous and determined that an attorney who, although hospitalized for ten days, continued to practice law from his hospital bed actively worked—by way of making phone calls to his office and visiting with some clients. *See also, Augusta v. John Hancock Mut. Life Ins. Co.*, 170 N.Y.S.2d 908, 915 (N.Y. Mun. Ct. 1958) (stating, "that the decedent was ill does not negative the fact that he actually worked" and finding a sales manager actively worked during his terminal illness although he was hospitalized at the time the plan became effective). Another case, *Roby v. Conn. Gen. Life Ins. Co.*, 349 A.2d 838,

9

840-42 (Conn. 1974), discussed "active service" in the context of a tenured university professor, who happened not to have any specific duties on the effective date of his life insurance plan. The court found the term ambiguous and held the plan took effect despite the professor having no assigned duties as of the eligibility date. *Id.* at 842-43.

On the other side, a Tennessee district court held a plaintiff did not qualify as "Actively at Work" despite his contentions he worked from home because the administrative record undercut that assertion. *McKay v. Reliance Standard Life Ins. Co.*, No. 1:06-CV-267, 2009 WL 5205375, *4-5 (E.D. Tenn. Dec. 23, 2009) aff'd, 428 F. App'x 537 (6th Cir. 2011).

Given the history of conflicting interpretations, findings of ambiguity, and the Plan language and facts of this case, the Court finds the Plan language ambiguous.

Where a court finds a plan's language ambiguous and a conflict of interest exists, the court considers the following factors to determine whether the administrator made an arbitrary decision in light of the conflict of interest: whether the decision (1) resulted from a reasoned and principled process, (2) aligns with any prior interpretations, (3) appears reasonable in light of any external standards, and (4) maintains consistency with the plan's purposes. *Weber*, 541 F.3d at 1011.

The denial letter in this case states that "[t]he employee's home was not an alternative work site." (Letter from Lori Myhr, Sr. Compliance Analyst, United of Omaha, to Karen Memmott (Jan. 30, 2013), Admin R., ECF No. 32-6 at 1.) The letter does not explain how United of Omaha reached that conclusion, except to say the two weeks prior to that time he worked more than forty hours each week at the Dealership. That the Dealership constituted Mr. Memmott's "customary place of employment" does not negate the possibility that his home represented an alternative work site from which his employer directed him to work. Thus,

United of Omaha's denial did not state a reasoned process by which to conclude that Mr. Memmott did not actively work from home at the direction of the Policyholder, his employer.

Neither side presented any evidence regarding United of Omaha's prior interpretations of this language.

United of Omaha notes receipt of the declarations attesting to Mr. Memmott's work but argues the declarations simply state Mr. Memmott actively worked while failing to provide evidence he actually performed his normal duties. Specifically, United of Omaha argues that "[w]hat little facts they do contain show he was performing only a fraction of his normal duties in locations other than his normal work site." (United of Omaha Mot. for Sum. J. 18, ECF No. 28.) The declarations, however, say the declarants believed Mr. Memmott actively worked on August 1 and 2, 2012, and give phone calls as some evidence of that work. Those declarations state that the employer directed Mr. Memmott to work from home on those days, and he did. The declarations further confirm that salespeople often worked from home with cell phone availability being important. United of Omaha did not develop any record evidence to contradict those representations. United of Omaha could have sought more detail from Mrs. Memmott or the other declarants about what Mr. Memmott did those days, but it did not. (Admin. R., ECF No. 32-6 at 2 (noting "[i]t was not necessary to contact anyone at the dealership during our appeal review, as we had their full and complete statements.").)

The Court notes that Mr. Memmott had a scheduled off day on July 31, 2012, and he needed only to work on August 1, 2012 to gain eligibility for coverage. United of Omaha rests its arguments primarily on the representation by Ms. Johnson that Mr. Memmott did not appear at work at the Dealership after July 30, 2012. However, Ms. Johnson's declaration stated that Mr. Memmott worked from home at the direction of his employer on August 1, 2012. Nothing

11

in the record contradicts this point.  Moreover, the *only* information in the record on the hours worked by Mr. Memmott on those days states that he worked thirty-two hours that week.

  United of Omaha's argument on this point appears quite similar to the insurer's argument in *Weber,* in particular that the plaintiff had to work a full day/week following the eligibility date for the plan to take effect.  *Weber,* 541 F.3d at 1013.  The plan in *Weber* appears quite similar to the Plan at issue.  *Cf., Weber*, 541 F.3d at 1005 *with* Certificate of Ins., Admin. R., ECF No. 32-1 at 13.  The Tenth Circuit dispatched with the administrator's argument about hours worked on or after the eligibility date finding that the plaintiff performed the duties of the job on the partial days she worked because the employer considered her a full-time employee at that time.  *Weber*, 541 F.3d at 1013-14.

  In this case, the Dealership clearly perceived Mr. Memmott as actively working on August 1 and 2, 2012, and considered him a full time employee until he died.  The hours worked by Mr. Memmott have even less relevance in this case where the Dealership compensates Mr. Memmott based on vehicles sold not based on hours worked.  Thus, Mr. Memmott's assistance in closing a deal on August 2, 2012 and earning a commission provides perhaps the best evidence that he actively worked on or after August 1, 2012.  For the reasons stated in *Weber,* 541 F.3d at 1013-15, the Court finds that the specific number of hours worked on the date of eligibility does not bear materially on the issue of whether Mr. Memmott actively worked that day.  Thus, because United of Omaha based its decision on its disbelief in the number of hours the declarants claimed Mr. Memmott worked on August 1 and 2, 2013, the determination does not comply with the law in the Tenth Circuit, and the Court does not find it reasonable in light of these external standards.  Hence, substantial evidence does not support United of Omaha's finding that Mr. Memmott did not actively work on August 1 and 2, 2012.

With respect to consistency with the Plan's purpose, the Plan provides for a three-month waiting period prior to eligibility and then starts the insurance on the first day of the following month if actively working. As the court held in *Weber,* 541 F.3d at 1015, were the Court to interpret the Plan language as requiring thirty-two hours of work the week after the eligibility date, or even eight hours at the Dealership, it would impose an additional waiting period not provided for by the Plan. In addition, such an interpretation would make the waiting period language incorrect and therefore meaningless. Therefore, the administrator's interpretation is inconsistent with the Plan's purposes.

Given the error of law, the lack of a reasoned process, the inconsistency with the plan, the lack of evidence in the record supporting United of Omaha's decision, and the conflict of interest, the Court RECOMMENDS the District Court find United of Omaha's interpretation and application of the "Active Work" requirement arbitrary and capricious.

### C. Remedy

The Court RECOMMENDS the District Court award benefits to Ms. Memmott. When a court finds an administrator's decision arbitrary and capricious, it "'may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or [] may order an award of benefits.'" *Weber*, 541 F.3d at 1017 (quoting *Flinders,* 491 F.3d at 1190). Where the record clearly supports a claimant's entitlement to benefits, the court should award benefits rather than remand. *Id.*; *see also DeGrado*, 451 F.3d at 1175-76. Sufficient information in the record and the law support a finding that Mr. Memmott did actively work on August 1 and 2, 2012. Specifically, all of the declarations provided demonstrate that Mr. Memmott worked from home on August 1 and 2, 2012. The only thing in the record that supports United of Omaha's conclusion that Mr. Memmott did not actively work on August 1 and 2, 2012 is the fact he did

not go to the Dealership on those days and thus did not clock in to work.  The Administrative Record undercuts that evidence, as explained above.  United of Omaha had the opportunity to develop the record further to support its finding and did not.  (Letter from Lori Myhr, Sr. Compliance Analyst, United of Omaha, to Karen Memmott (Jan. 30, 2013), Admin R., ECF No. 32-6 at 2 (noting no need to clarify the statements made in the declarations.)  The Court can only conclude that United of Omaha developed the record as far as it could.  Therefore, the Court RECOMMENDS the District Court award benefits to Ms. Memmott.

## RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Court grant Ms. Memmott's Motion for Summary Judgment and deny United of Omaha's Motion for Summary Judgment.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  *Id.*  Failure to object may constitute waiver of objections upon subsequent review.

Dated this 31st day of July, 2014.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge